IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–00980–REB–KMT

DJS ONE, INC., a Colorado corporation,

    Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for COMMUNITY BANKS OF COLORADO,

    Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendant Federal Deposit Insurance Corporation, as receiver for Community Banks of Colorado's (hereinafter, "FDIC-R") "Motion to Dismiss Complaint of Plaintiff DJS One, Inc. for Failure of Subject Matter Jurisdiction." (Doc. No. 11, filed June 18, 2014.) Plaintiff's Response to FDIC-R's Motion to Dismiss was filed on July 8, 2014 (Doc. No. 20) and FDIC-R filed a Reply on July 22, 2014 (Doc. No. 21). For the following reasons, the court RECOMMENDS that FDIC-R's Motion to Dismiss be GRANTED.

### FACTUAL BACKGROUND

The following factual background is taken from Plaintiff's Complaint (Doc. No. 1, filed April 7, 2014) and the parties' briefing with respect to this Recommendation.

In 2007, Nevada Ridge, L.L.C. obtained a revolving line of credit (the "Line of Credit") from Community Banks of Colorado ("CBC") secured by real property in Gunnison County,

Colorado (the "Gunnison County Property"). (Compl. ¶¶ 10-11.) The Line of Credit matured on August 1, 2011 with a balance of approximately $6,000,000.00 outstanding. (*Id.* ¶¶ 12-13.) Because Nevada Ridge was unable to pay off the balance on the Line of Credit, in order to avoid a default, Nevada Ridge and Plaintiff DJS One, Inc. negotiated with CBC to have Plaintiff purchase the Line of Credit for approximately $2,000,000. (*Id.* ¶¶ 13-14.) Plaintiff alleges that it and CBC ultimately executed a loan purchase agreement on September 20, 2011 and scheduled a closing date on the transaction for November 30, 2011. (*Id.* ¶ 14.)

On October 21, 2011, just over a month prior to the November 30, 2011 closing date, CBC failed as a banking entity. (Compl. ¶ 15; Mot., Ex. E, Declaration of William A. Starnes, ¶ 2 [Starnes Decl.].) That same day, FDIC-R was appointed as receiver of CBC. (Starnes Decl. ¶ 2.) FDIC-R transferred the Line of Credit to Bank Midwest, N.A. (Compl. ¶ 16.)

On or about October 27, 2011, FDIC-R published notice in the Denver Post; the Aspen Times; the Valley Courier in Alamosa, Colorado; the Pueblo Chieftain; and the Sacramento Bee informing CBC's creditors that they must present their claims, together with all necessary proof, to FDIC-R on or before January, 25, 2012. (Starnes Decl. ¶ 3.) FDIC-R republished this notice in the samokoae publications on or about November 28, 2011 and December 28, 2011. (*Id.* ¶ 4.)

Plaintiff admits that it learned on January 17, 2012 that FDIC-R had been appointed as receiver for CBC. (Resp. at 7.) Plaintiff did not file a proof of claim with FDIC-R on or before January 25, 2012. (*See id.* ¶ 1; Ex. 1.)

Sometime in 2012, Bank Midwest became NBH Bank, N.A. (Compl. ¶ 20.) NBH Bank subsequently brought a public trustee foreclosure proceeding in state court, pursuant to Colo. R.

2

Civ. P. 120, to foreclose upon the Gunnison County Property. (Mot. ¶ 24, Ex. B; *see also* Compl. ¶ 21.) The state court entered an order authoring the sale of the Gunnison County Property. (Mot., Ex. B.)

On July 18, 2013, NBH Bank filed a separate state court action against Nevada Ridge to enforce the Line of Credit. (Mot. ¶ 25; Resp. at 2.) Plaintiff intervened as a defendant and also filed a third party complaint to enforce the loan purchase agreement, prevent foreclosure upon the Gunnison County Property, and to obtain financial compensation for any foreclosure that occurred. (Mot. ¶ 25; Resp. at 2.) This second state court action was resolved in favor of NBH Bank and against Nevada Ridge and Plaintiff. (*See* Mot., Ex. C-D.)

Plaintiff maintains that on September 30, 2013, it learned through discovery in the second state court action that neither Bank Midwest or NBH Bank submitted a claim on the loan purchase agreement to FDIC-R on Plaintiff's behalf. (Resp. at 2.) As such, two days later, on October 2, 2013, Plaintiff filed a Proof of Claim regarding the loan purchase agreement with the FDIC-R. (Compl., Ex. A.) On February 4, 2014, FDIC-R denied Plaintiff's claim as untimely. (*Id.,* Ex. 2.)

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts two claims for relief. Plaintiff's first claim for relief seeks to require FDIC-R to reconsider its denial of Plaintiff's claim. Plaintiff's second claim for relief is for breach of contract against FDIC-R based on FDIC-R's failure to close on the loan purchase agreement. Plaintiff seeks an order for specific performance on the loan purchase agreement, an

order directing FDIC-R to reconsider the disallowance Plaintiff's administrative claim, and compensatory damages for breach of the loan purchase agreement against FDIC-R. (*Id.* at 6-7.)

FDIC-R's Motion to Dismiss argues that the court lacks subject matter jurisdiction to consider Plaintiff's claims under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*, because (1) Plaintiff failed to file a timely administrative claim with FDIC-R, [1] and (2) failed to timely file this action after its administrative claim was disallowed.

## LEGAL STANDARD

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it

---

[1] FDIC-R requests that, in considering its argument that Plaintiff failed to timely exhaust administrative remedies, the court (1) take judicial notice of a certain facts found by the state court in the second state court action, and (2) adopt those facts in a manner adverse to Plaintiff, pursuant to the doctrine of collateral estoppel, or issue preclusion. (Mot. at 3-4.) The court finds it unnecessary to do so because the court is instead able to affirmatively find the facts necessary to address FDIC-R's exhaustion argument from the allegations of the Complaint and the record before the court.

becomes apparent that jurisdiction is lacking.  *See id*.  The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction.  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  *Id.*

## ANALYSIS

Congress enacted FIRREA in 1989 "in response to the 'precarious financial condition of the nation's banks and savings and loan institutions.'"  *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.,* 168 F.3d 1173, 1178 (10th Cir. 1999) (quoting *RTC v. Love,* 36 F.3d 972, 975 (10th Cir. 1994)).  FIRREA grants broad powers to the FDIC to "deal expeditiously with failed financial institutions."  *Love,* 36 F.3d at 975; *see also* § 1821(d)(2) (listing powers of the FDIC in its capacity as receiver).  Upon appointment as receiver, the FDIC succeeds to "all rights, titles,

5

powers, and privileges of the insured depository institution," § 1821(d)(2)(A), along with the duty to "pay all valid obligations of the insured depository institution," § 1821(d)(2)(H).

### A. FIRREA's Exhaustion Requirement

FIRREA establishes an administrative procedure through which the FDIC adjudicates claims asserted against the failed financial institution. *Love,* 36 F.3d at 975; *FirsTier Bank, Kimball, Neb. v. FDIC,* 935 F. Supp. 2d 1109, 1116 (D. Colo. 2013). Under FIRREA, the FDIC is first required to provide notice to the failed depository institution's creditors. § 1821(d)(3)(B)-(C). Generally, upon becoming receiver, the FDIC must promptly publish a notice to the depository institution's creditors informing them that they must present their claims before a certain date—the "bar date"—which must be at least ninety days after publication of the notice. § 1821(d)(3)(B)(i). This notice must be republished approximately 1 month and 2 months, respectively, after the initial notice. § 1821(d)(3)(B)(ii). In addition, the FDIC must mail a similar notice to (1) creditors appearing on the institution's books, and (2) claimants not appearing on the books but whose names and addresses the FDIC later discovers. § 1821(d)(3)(C).

If a claimant fails to present a claim to the FDIC by the bar date, FIRREA states that the claim "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i).[2]

---

[2] Although the FDIC-R contends, and Plaintiff does not dispute, that a failure to file a proof of claim with the FDIC prior to the bar date divests the court of subject matter jurisdiction, the court is not so convinced. While the Tenth Circuit has concluded that exhaustion before the FDIC is a jurisdictional requirement, *Love,* 36 F.3d at 976, "it does not necessarily follow that compliance with the time limits imposed by the FDIC have the same force," *Carlyle Towers Condo. Ass'n, Inc.,* 170 F.3d 301, 307 (2d Cir. 1999). Further, courts have disagreed as to whether a failure to *timely* exhaust before the FDIC forecloses the exercise of subject matter jurisdiction. *Compare, e.g., Althouse v. RTC,* 969 F.2d 1544, 1546 (3d Cir. 1992) (failure to file

The sole exception is for claimants who "did not receive notice of the appointment of the receiver in time to file such claim before [the bar] date" and who filed their claim "in time to permit such payment." § 1821(d)(5)(C)(ii).

**B.     Homeland Stores *Exception***

As an initial matter, Plaintiff argues that its claims are not subject to FIRREA's exhaustion requirements because its breach of contract claims "arose against the FDIC-R in a post-receivership capacity, where the FDIC-R had a specific and separate obligation to act on the contract of the failed institution." (Resp. at 12.) For this proposition, Plaintiff relies on the Tenth Circuit's decision in *Homeland Stores, Inc. v. RTC,* 17 F.3d 1269, 1275 (10th Cir. 1994).

---

a timely claim prior to the bar date precludes the exercise of subject matter jurisdiction); *Alkasabi v. Wash. Mutual Bank, F.A.,* --- F. Supp. 2d ----, 2014 WL 1193899, at *3-4 (D.D.C. Mar. 24, 2014) (Because the FIRREA claims process is jurisdictional, a failure to file a timely claim with the FDIC forecloses the exercise of subject matter jurisdiction), *with Carlyle Towers Condo. Ass'n,* 170 F.3d at 306-310 (timely filing with the FDIC prior to the bar date is not a jurisdictional prerequisite, but instead a filing period akin to a statute of limitations); *Campbell v. FDIC,* 676 F.3d 615, 618 (7th Cir. 2012) (FIRREA's rules for claims submission are properly characterized as claims processing rules). The Tenth Circuit has not directly addressed this question.

Fortunately, the court finds that it need not resolve this issue in order to address the FDIC-R's Motion to Dismiss. More specifically, even those courts that have found that FIRREA's requirement that claims be filed with the FDIC prior to the bar date is non-jurisdictional have still concluded that it constitutes a filing period akin to a statute of limitations. *Carlyle Towers,* 170 F.3d at 310. Here, all of the dates necessary to determine whether Plaintiff filed its proof of claim in compliance with FIRREA are outlined in the Complaint. (*See* Compl. ¶¶ 3-7.) As such, even assuming that compliance with the bar date is non-jurisdictional, the court may still resolve this issue under Fed. R. Civ. P. 12(b)(6). *Solonmon v. HSBC Mortg. Corp.,* 395 F. App'x 494, 497 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036, 1041, n.4 (10th Cir. 1980)) ("Although the statute of limitation is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'").

7

In *Homeland Stores*, the Resolution Trust Corporation ("RTC")[3] took over management of the Belmont Square shopping center. Homeland Stores, a tenant in the shopping center, had signed a lease that guaranteed that the anchor tenant would be "similar" to the original anchor tenant and would be "acceptable" to Homeland Stores. By selecting a new, "unacceptable" anchor tenant, the FDIC allegedly breached its lease with Homeland Stores. *See id.* at 1270-71.

Despite Homeland Stores' failure to exhaust its claims through the administrative claims process, the Tenth Circuit held that Homeland Stores' claims were not barred because its claims arose solely from RTC's management of the receivership asset. *See id.* at 1275-76. The Tenth Circuit expressed concern that applying the plain language of FIRREA would close the administrative process to Homeland Stores and leave it without an administrative or judicial forum to raise its claims. *See id.* at 1274 n.5. The Tenth Circuit also relied on precedent from the Ninth and First Circuits, citing, respectively, *RTC v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir. 1993) and *Heno v. FDIC*, 996 F.2d 429 (1st Cir. 1993) ("*Heno I*"). *Id.* at 1274–75. The Tenth Circuit also noted that § 1821(d) refers primarily to the RTC (or FDIC) as a receiver, but the RTC's conduct in managing the Belmont shopping center fell "more squarely under the RTC's power as 'conservator.'" *Id.* at 1275.

Although *Homeland Stores* has never been overturned by the Tenth Circuit, at least one decision from this district has found "ample reason to question whether *Homeland Stores* is still good law." *FirsTier Bank,* 935 F. Supp. 2d at 1120. "Importantly, in carving out a jurisdictional

---

[3] "The powers delegated to the FDIC and RTC are identical. Thus, the case law does not distinguish between the two and neither will the Court." *Mile High Banks v. FDIC,* No 11-cv-01417-WJM-MJW, 2011 WL 2174004, at *1 n.1 (D. Colo. June 2, 2011).

exception to the exhaustion requirement, the Tenth Circuit explained that none of the reasons it provided 'standing alone necessarily dictate[d] the outcome.'" *Id.* (quoting *Homeland Stores,* 17 F.3d at 1275). "Rather, the Tenth Circuit stated that various factors, 'taken together,' led to its holding." *Id.* at 1120-21.

One of the factors relied upon in *Homeland Stores* was precedent from other circuits. "However, every circuit court to consider the issue since *Homeland Stores* has held that the exhaustion requirement does apply to post-appointment claims." *Id.* at 1121, n.17 (collecting cases). Moreover, neither of the cases relied upon in *Homeland Stores* are still good law. *Id.* The Ninth Circuit has explicitly disagreed with the *Homeland Stores* approach, *see McCarthy v. FDIC,* 348 F.3d 1075, 1081 (9th Cir. 2003) (discussing *Homeland Stores* and concluding "that claimants . . . who challenge conduct by the FDIC as receiver, must exhaust administrative remedies before seeking judicial review), and, after withdrawing its opinion in *Heno I,* the First Circuit subsequently concluded that the RTC's internal procedures could accommodate post-receivership claims, *see Heno v. FDIC,* 20 F.3d 1204, 1208-09 (1st Cir. 1994) ("*Heno II*"). Given that the holding in *Homeland Stores* was based on a combination of several factors, and one of those factors, precedent from other circuits, now appears invalid, it is unclear whether the Tenth Circuit would now arrive at the same conclusion that it reached in *Homeland Stores. Id.* Thus, to the extent that *Homeland Stores* is still good law, the court will follow the *FirsTier* court's lead, and construe it narrowly. *Id.*

One critical difference between this case and *Homeland Stores* is that here, unlike in *Homeland Stores,* the FDIC was acting as a receiver of CBC, rather than as a conservator. *See*

*Homeland Stores,* 17 F.3d at 1275 (finding that the RTC was acting as a conservator, which suggested that Homeland's claims were not subject to jurisdictional bar for failure to exhaust because § 1821(d) primarily refers to the RTC as a receiver). One of the functions of a receiver is to "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." *Id.* (quoting § 1821(d)(2)(E)). In contrast, the FDIC, as conservator, is empowered to take such action as may be "necessary to put the insured depository institution in a sound and solvent condition" and "carry on the business of the institution and preserve and conserve the assets and property of the institution." *Id.* (quoting § 1821(d)(2)(D)). Although the "lines between the two functions may blur at times," *Homeland Stores,* 17 F.3d at 1275, here Plaintiff admits that FDIC-R acted as receiver for CBC. (Compl. ¶¶ 4, 15.) Indeed, FDIC-R plainly acted as a receiver, rather than a conservator, by assigning all of CBC's assets to Bank Midwest. (*Id.* ¶ 15-16.)

Accordingly, the court finds that *Homeland Stores* exception to administrative exhaustion does not apply on the facts of this case. As such, Plaintiff was required to timely exhaust its administrative remedies prior to filing this action.

### C. *§ 1821(d)(5)(C)(ii) Exception*

Plaintiff concedes that it did not file its Proof of Claim until October 2, 2013—more than 600 days after the February 25, 2012 bar date set by FDIC-R. Plaintiff appears to argue that its failure to timely file a claim with FDIC-R should be excused because FDIC-R did not mail it the notice required by § 1821(d)(3)(C). (Resp. at 3-5.)[4] However, courts have roundly concluded

---

[4] Plaintiff also challenges whether the notice published in various newspapers was sufficient under FIRREA. (Resp. at 5-7.) However, because the court finds that Plaintiff was on "inquiry

that "FIRREA does not allow waiver of the exhaustion requirement even for claimants to whom the [FDIC] failed to mail the required notice of the claims process and bar date." *Elmco Props, Inc. v. Second Nat'l Fed. Savings Ass'n,* 94 F.3d 914, 919 (4th Cir. 1996); *see also Freeman v. FDIC,* 56 F.3d 1394, 1402-(D.C. Cir. 1995); *Intercontinental Travel Mktg., Inc. v. FDIC,* 45 F.3d 1278, 1285 (9th Cir. 1994); *Meiezer v. RTC,* 952 F.2d 879, 882-83 (5th Cir. 1992); *Tri-State Hotels, Inc. v. FDIC,* 79 F.3d 707, 716 (8th Cir. 1996). Instead, the "*only* statutorily-specified exemption from the strict requirement of the administrative claims process is provided if 'the claimant did receive *notice of the appointment of the receiver* in time to file a claim.'" *Freeman,* 56 F.3d at 1402 (quoting § 1821(d)(5)(C)(ii)) (emphasis in original). *See also id.* ("That § 1821(d)(5)(C) *expressly* provides for a *partial* exemption for failure to provide notice undercuts appellants' argument that we should find an *implicit total* exemption from the claims process for failure to provide notice in § 1821(d)(3)(C).") (emphasis in original). Accordingly, even assuming FDIC-R was required to mail Plaintiff notice, and failed to do so, Plaintiff's failure to timely file its proof of claim can only be excused if § 1821(d)(5)(C)(ii) is satisfied.[5]

The court finds that Plaintiff does not qualify for the exception outlined at § 1821(d)(5)(C)(ii). A number of decisions have recognized that a claimant cannot complain about a lack of formal notice under 12 U.S.C. § 1821(d)(3)(B)-(C) when it had "inquiry notice"—that

---

notice" that FDIC-R had been appointed as receiver for CBC, the court need not determine the sufficiency of the notice by publication.

[5] Plaintiff also argues that the FDIC-R's failure to provide it with notice failed to comply with due process. (Resp. at 10-12.) However, the court's finding that Plaintiff was on inquiry notice that FDIC-R had been appointed as receiver defeats this argument. *Elmco Props.,* 94 F.3d at 922 ("[I]f Elmco had timely, actual knowledge that FSA had entered receivership, its due process argument might be defeated by its own failure to act on that knowledge to protect its rights.").

is, knowledge that a bank had entered receivership. *Elmco Props, Inc.,* 94 F.3d at 921-22; *Intercontinental Travel Mktg.,* 45 F.3d at 1286; *Campbell,* 676 F.3d at 620-21; *RTC Mortg. Trust 1994-N2 v. Haith,* 133 F.3d 574, 579 (8th Cir. 1998). These decisions comport with the language of § 1821(d)(5)(C)(ii), which does not exempt claimants who were not provided formal notice from exhaustion, but instead exempts only those claimants who "did not receive *notice of the appointment of the receiver* in time to file such claim before the [bar] date." (emphasis added).

Here Plaintiff admits that it learned that FDIC-R was a receiver for CBC on January 17, 2012—eight days prior to the claims bar date. (*See* Resp. at 7-8, Ex. C; *see also* Compl. ¶ 19.) Plaintiff nevertheless argues that it acted reasonably or with excusable neglect by failing to submit its proof of claim to FDIC-R on or before the claims bar date because it believed that Bank Midwest had submitted the loan purchase agreement to FDIC-R and that, therefore, Plaintiff was not required to take further action at that time. (Resp. at 7-8.) However, by its plain terms, FIRREA does not excuse a claimant's failure to file an administrative claim even if the claimant acted reasonably or with excusable neglect. Instead, FIRREA provides an exception to timely exhaustion only where the claimant can show that it did not "receive notice of the appointment of the receiver in time to file a claim." § 821(d)(5)(C)(ii).

Moreover, even if reasonableness or excusable neglect were sufficient grounds to allow a claimant to exhaust after the claims bar date, the court disagrees that Plaintiff's neglect was excusable. More specifically, in the January 17, 2012 email that put Plaintiff on notice that FDIC-R had been appointed as receiver for CBC, Bank Midwest advised Plaintiff that the FDIC

had not responded to the request to approve the loan purchase agreement and, "given the economics of the proposed transaction," would not "respond positively to the request." (Resp., Ex. C.) As such, the court cannot agree that it was reasonable for Plaintiff to sit on its rights by foregoing FIRREA's administrative claims process merely because it believed Bank Midwest had submitted the loan purchase agreement to FDIC-R for approval.

Finally, although a somewhat close call, the court finds that Plaintiff received notice of the appointment of FDIC as receiver for CBC "in time to file such claim before the [bar] date." § 1821(d)(5)(C)(ii)(I). Consistent with the exception outlined in § 1821(d)(5)(C)(ii), the Seventh Circuit recognized in *Campbell,* that "a court would presumably be justified in finding that a claim arising within the filing window but so near the general bar date as to not afford a meaningful opportunity to file a claim with the FDIC is not subject to the bar date." 676 F.3d at 620. However, the Seventh Circuit found that "such a near-midnight discovery scenario was not present" in *Campbell* because, upon receiving notice that the FDIC had been appointed receiver of the failing bank, the claimant had "twelve days to draft and submit a claim." *Id.*

Here, although Plaintiff learned that the FDIC had been appointed as receiver with slightly less time than the claimant in *Campbell,* the court finds that it had sufficient time to file a claim before the claims bar date. Notably, when Plaintiff ultimately submitted its proof of claim on October 2, 2013, it did so only two days after it learned that Bank Midwest had not submitted the loan purchase agreement to FDIC-R for approval, as it previously believed. Thus, while eight days might not have been "an ideal amount of time to craft a claim," *Campbell,* 676 F.3d at 620, the court finds it was sufficient to permit Plaintiff to draft and file a claim with FDIC-R.

Altogether, the court finds that Plaintiff failed to file its claim regarding the loan purchase agreement with FDIC-R by the claims bar date and that Plaintiff does not qualify for the exception outlined in § 1821(d)(5)(C)(ii). Accordingly, the court finds that Plaintiff's Complaint is properly dismissed for failure to timely exhaust administrative remedies. [6]

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that FDIC-R's "Motion to Dismiss Complaint of Plaintiff DJS One, Inc. for Failure of Subject Matter Jurisdiction" (Doc. No. 11) be GRANTED and that Plaintiff's Complaint be DISMISSED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's

---

[6] Because the court finds that Plaintiff's Complaint is properly dismissed for failure to exhaust, it does not address FDIC-R's alternative argument that Plaintiff failed to file this action within 60 days of receiving the Notice of Disallowance from FDIC-R, as required by § 1821(d)(6)(A)-(B).

proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 31st day of December, 2014.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge